31 N.J. Super. 167 (1954)
106 A.2d 23
GERTRUDE DuCHARME, ADMINISTRATRIX OF THE ESTATE OF WALDO C. DuCHARME, PETITIONER-RESPONDENT,
v.
COLUMBIA ENGINEERING CO., INC., A CORPORATION, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 24, 1954.
Decided June 17, 1954.
*168 Before Judges EASTWOOD, JAYNE and FRANCIS.
Mr. Seymour Rudenstein argued the cause for the respondent (Messrs. Mellinger & Rudenstein, attorneys).
Mr. Robert Shaw argued the cause for the appellant (Mr. Edward B. Meredith and Messrs. Shaw, Hughes & Pindar, attorneys).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
The sole question on this appeal is whether the injury suffered by the employee arose out of and in the course of his employment.
On December 21, 1951 the employee worked in defendant's tool crib department from 7:30 A.M. until 12:32 P.M., at *169 which time he finished his duties, washed up and punched out. However, he did not leave the employer's premises, but went downstairs to the first floor where a Christmas party was in progress. The employee asserted, without dispute by the defendant, that he partook of no refreshments at the party. His testimony was that he remained at the party for a length of time because the employer's general manager requested him to await the arrival of some hams which were to be given to the employees as Christmas gifts.
Upon receiving his gift the employee proceeded to leave the plant and in so doing slipped on an outside stairway leading from the plant entrance to the public sidewalk, as a consequence of which he sustained injuries. The deputy director and the County Court, on appeal, 28 N.J. Super. 365, found that the employee sustained compensable injuries as the result of an accident arising out of and in the course of his employment. This appeal stems from the judgment of the County Court.
The appellant contends that the accident is not compensable; that the incident occurred in a manner entirely unconnected with his duties of employment; that the situation here presented does not come within the "mutual benefit" doctrine, the Christmas party being entirely voluntary and not supervised by the employer; that not all employees attended; that all work ceased for the day at 12:30 P.M., and the employees were not paid for the time spent at the affair.
There is testimony that when about three weeks prior to the incident in question the matter of a Christmas party arose, the employees asked the general manager if there would be a party. In response the employer not only granted permission to use the premises, but also paid for the refreshments and gave gifts to the employees. It was further shown that prior to the party, notices had been posted in the plant announcing the event and as disclosed by the following testimony of the general manager, the permission to use the employer's premises for the event and paying the expenses *170 was in furtherance of labor-management relationship, to wit:
"Q. Worthwhile, in what respect? A. Worthwhile in what respect?
Q. Yes. A. Mr. Rycyk and I had acknowledged the fact the employees  that naturally, payment for the food, that as far as we were concerned, we are a big family, and what is best for the company would go for all of us, and I made the gesture to the employees since they had been paying their own Christmas party without asking us to pay, we would contribute that as a gesture which would be worthwhile, and I said we would.
Mr. Meredith: My objection stands to this line of questioning.
The Deputy Director: Yes.
As I understand your answer, Mr. Beck, the future labor-management relationship, is that right, am I right in assuming that?
Mr. Meredith: May I respectfully object to the Court's question?
The Deputy Director: Yes, the objection is noted on the record. Overrule your objection.
Answer the question, Mr. Beck.
The Witness: I said so.
The Deputy Director: Your answer to the question, by that do you mean your future labor-management relations on both sides, so far as the employer or management, so far as your management of the concern, to pay for the refreshments at the party, is that correct?
The Witness: That is correct, regardless of what the employees did, I suggested better employee-employer relationship, regardless of what they did."
In Saintsing v. Steinbach Company, 1 N.J. Super. 259 (App. Div. 1949), affirmed 2 N.J. 304 (1949), it was held that an injurious after effect of a vaccination given by the employer as a gratuitous service to its employees in the interest of promoting employee-employer relationship and designed to create and foster mutual benefits was a compensable injury. In the Steinbach case, the employer posted notice of its offer to inject the vaccine without cost to the employees and it was received on a purely voluntary basis.
In Kelly v. Hackensack Water Co., 10 N.J. Super. 528 (App. Div. 1950), this court held as compensable a fatal injury received by an employee on a company-sponsored outing. In finding the accident a compensable one, the court said:
*171 "We perceive that a wholesome contribution to a sound employer-employee relationship resulted from the outing as it was conducted; that the affair was mutually beneficial; and that it was not merely respondent's gratuity for the exclusive benefit of the employees."
More recently, in the case of Harrison v. Stanton, 26 N.J. Super. 194, 199 (App. Div. 1953), affirmed 14 N.J. 172 (1954), Judge Jayne summarized the criteria on which accidental injuries sustained during recreational activities have been held compensable and stated:
"* * * Many reported decisions may be found concerning the compensability of injuries sustained while in the pursuit of recreational activities. An examination of the adjudications discloses that the courts in determining whether the employment and the recreation are related with sufficient proximity to warrant an award, have evolved and resorted to certain relevant, though not exclusive, criteria, among which the following may be enumerated: (a) the customary nature of the activity; (b) the employer's encouragement or subsidization of the activity; (c) the extent to which the employer managed or directed the recreational enterprise; (d) the presence of substantial influence or actual compulsion exerted upon the employee to attend and participate; and (e) the fact that the employer expects or receives a benefit from the employee's participation in the activity. Vide, Kelly v. Hackensack Water Co., 10 N.J. Super. 528 (App. Div. 1950), and 23 N.J. Super. 88 (App. Div. 1952); Moore's Case [330 Mass. 1] 110 N.E.2d 764 (Mass. Sup. Ct. 1953)."
Considering the aforementioned proofs, we conclude that the incident in question is clearly within the "mutual benefit" doctrine and as such is compensable.
The accident having occurred on the steps leading from the defendant's plant to the sidewalk, it is readily apparent that these steps constitute a part of the employer's premises and that an injury sustained while ascending or descending them may be the result of a compensable accident. Cossari v. L. Stein & Co., 1 N.J. Super. 39 (App. Div. 1948); Basinski v. Detroit Steel Corporation, 2 N.J. Super. 39 (App. Div. 1949).
It should be noted that the employee died on May 2, 1954, but there is no contention that his death is causally related to the accident.
The judgment is affirmed.